IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL MO'HAMMED LEE     :     CIVIL ACTION
                          :
  v.                      :     No. 17-2528
                          :
WARDEN C. LINK, et al.    :

# MEMORANDUM

**Juan R. Sánchez, J.**                                          **March 5, 2018**

Pro se Plaintiff Michael Mo'hammed Lee, a prisoner in state custody who was previously housed in the State Correctional Institute in Graterford, Pennsylvania (SCI-Graterford), brings this action pursuant to 42 U.S.C. § 1983 against SCI-Graterford Warden Cynthia Link, Deputy Warden Laura Banta, and Correctional Officer Jamelle Norris, seeking damages for injuries he sustained when another inmate attacked him in a "blind spot" area inside the prison. Defendants ask this Court to dismiss Lee's Complaint in its entirety, arguing that any claims against them in their official capacities are both barred by the Eleventh Amendment and not cognizable under § 1983, and that Lee has failed to state a plausible claim for relief against any of them in their individual capacities. For the reasons set forth below, Defendants' motion to dismiss will be granted in part and denied in part, and Lee will be granted leave to amend.

**FACTS**[1]

Lee's claims arise out of an altercation with another inmate that occurred at SCI-Graterford on February 19, 2017. That afternoon, as Lee was walking to the "New Side Library," another inmate confronted Lee, then attacked him with a homemade weapon, cutting him once on the face and twice on his arm. Compl. 3. The attack occurred in a blind spot area

---

[1] The following facts are drawn from Lee's Complaint, amended to include the additional paragraph set forth in his September 14, 2017, motion to amend, which will be granted.

within the prison that was not equipped with a security camera. No correctional officers were present during the attack.

Following the attack, Lee walked back to his cell block and reported the incident to the block officer, Defendant Norris. Rather than send Lee to the medical department, Norris responded by telling Lee that if he went to the medical department he would be sent to "the hole," receive a write up, and "mess up [his] parole," and she kept Lee on the cell block. *See id.* Lee did not receive medical attention for his cuts on the day of the attack. Although Lee eventually was taken to the medical department,[2] where his cuts were "looked at" and photos were taken of his injuries, he did not receive any pain medication or follow up wound care. *See* Compl. 3.

Two days after the attack, on February 21, 2017, Lee received a threatening letter. He gave the letter to a sergeant, who put Lee on "self lock up." *Id.* Around the time he was put on self lock up, Lee told Deputy Warden Banta that he had been cut and that there were no security cameras or officers in the hallway where the attack occurred. Banta told Lee the issue would be "looked at." *Id.* at 5. Lee subsequently learned that in April 2017, two months after he was attacked, a new security camera was installed in the area where the attack occurred. *See id.* at 6.

Lee brings claims against all Defendants pursuant to § 1983 for violating his Eighth and Fourteenth Amendment rights. Lee seeks to hold Warden Link and Deputy Warden Banta liable for failing to protect him from the assault, alleging both Defendants knew the area where the assault occurred was a blind spot, and knew or should have known that that the lack of staff supervision and security cameras in the area could lead to injuries to inmates.

---

[2] According to Lee's opposition to the motion to dismiss, he went to the medical department on February 21, 2017, two days after he was attacked. *See* Pl.'s Opp'n to Mot. to Dismiss 2.

As to Norris, Lee alleges she misled him regarding the consequences of reporting the incident and seeking medical attention, and forced him to stay on the cell block after the attack. Although the basis for Lee's claims against Norris is not entirely apparent from the Complaint itself, his opposition to the motion to dismiss suggests that he seeks to pursue claims for denial of medical care and failure to protect. *See* Pl.'s Opp'n to Mot. to Dismiss 1-3.

**DISCUSSION**

    **A.**    **Official Capacity Claims**

Defendants argue that insofar as Lee sues them in their official capacities, the claims are barred by the Eleventh Amendment. The Court agrees.

Under the Eleventh Amendment, states are generally "immune from suit by private parties in the federal courts." *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Eleventh Amendment immunity extends to state agencies, such as the Department of Corrections, *see id.*, as well as to state officials sued for damages in their official capacities, *see Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Although Eleventh Amendment immunity may be lost through waiver or congressional abrogation, *see Lavia*, 224 F.3d at 195, the Commonwealth of Pennsylvania has expressly declined to waive its immunity, *see id.*, and the Supreme Court has held that "§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity," *Graham*, 473 U.S. at 169 n.17.

Because Lee seeks only damages in this action, *see* Compl. 5-6, his claims are barred by the Eleventh Amendment insofar as he sues Defendants in their official capacities. Any official capacity claims will therefore be dismissed with prejudice.

### B. Individual Capacity Claims

Defendants move to dismiss Lee's claims against them in their individual capacities pursuant to Federal Rule of Civil Procedure 12(b)(6). To withstand such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court first must separate the legal and factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Where, as here, the plaintiff is proceeding pro se, the court must construe the complaint liberally, accept as true all well-pleaded factual allegations therein, and draws all reasonable inferences in plaintiff's favor. *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 604 (3d Cir. 2015). The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

As noted, Lee's claims against Link and Banta concern their failure to protect him from being assaulted on February 19, 2017. Although prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners," not every injury suffered by one prisoner at the hands of another will "translate[] into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citation omitted). To state an Eighth Amendment claim for failure to protect, a prisoner must plead facts showing "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and

safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).

Deliberate indifference is a subjective standard in the prison context. *Id.* A prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837. Such actual knowledge may, however, be proved by "inference from circumstantial evidence," including the obviousness of the risk in question. *See Bistrian*, 696 F.3d at 367 (observing "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious" (quoting *Farmer*, 511 U.S. at 842)).

Measured under these standards, Lee's claim falls short. With respect to deliberate indifference, the Complaint alleges that Link and Banta knew the area where Lee was attacked was a blind spot but failed to have the area monitored by security cameras or correctional officers at the time of the attack. Lee does not allege there was any history of inmate assaults in the area in question, much less that Link and Banta were aware of any such assaults, and does not allege any additional facts—beyond the fact that the area was a blind spot—suggesting Link and Banta would have been aware that inmate assaults were likely to occur there. Although prison blind spots undoubtedly create a risk of danger to inmates, making prison officials' knowledge of a blind spot relevant to the deliberate indifference inquiry, knowledge of the existence of a blind spot, standing alone, does not support the reasonable inference that prison officials knew of a substantial risk of serious harm to inmate safety. *Compare Blueberry v. Comanche Cty. Facilities Auth.*, 672 F. App'x 814, 818 (3d Cir. 2016) (affirming the dismissal of a failure-to-protect claim at the summary judgment stage based in part on the lack of any

5

evidence that prison blind spots "presented such an obvious risk that [the prison] was aware of them before the incidents alleged in this case"); *Mitchell v. New York*, No. 14-934, 2015 WL 13019618, at *3 (N.D.N.Y. Mar. 11, 2015) (holding a plaintiff's "conclusory claim that the 'common area' had a 'propensity to be highly violate' due to a 'blind spot,'" was insufficient to state a failure-to-protect claim absent some allegation that the defendant "was aware of specific deficiencies in the security in that area and failed to act, despite knowledge that 'a substantial risk of attacks in the [area] was pervasive and well-documented'" (citation omitted)), *with Marten v. Burns*, No. 13-266, 2015 WL 1431079, at *5 (W.D. Pa. Mar. 27, 2015) (denying summary judgment as to a failure-to-protect claim based on evidence that prison officials knew that architectural blind spots existed in the prison's concrete yards and that assaults occurred in the blind spots which were not detected by surveillance cameras or staff); *Warren v. Goord*, 476 F. Supp. 2d 407, 411 (S.D.N.Y. 2007) (holding a plaintiff sufficiently alleged deliberate indifference for purposes of a failure-to-protect claim based on the lack of metal detectors at the entrance to a prison yard, where the complaint alleged prison officials were aware that assaults and stabbings regularly took place in the prison yards, weapons were stored in the yards, and an inmate had been killed in one yard in the year preceding the plaintiff's attack); *cf. Farmer*, 511 U.S. at 842-43 (suggesting a plaintiff may demonstrate deliberate indifference by presenting evidence "showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," where "the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it" (internal quotation marks and citation omitted)).

In his opposition to the motion to dismiss, Lee stresses that after he was attacked, the area in question was inspected and a new security camera was installed. As Lee observes, the

decision to install a new security camera after Lee's assault suggests that prison officials determined that the area where the assault occurred was in fact unsafe. *See* Pl.'s Opp'n to Mot. to Dismiss 3-4. Without more, however, it does not support the inference that Link and Banta knew the area was unsafe at the time of Lee's assault two months earlier. *See Blueberry*, 672 F. App'x at 818 (observing that the installation of additional security cameras to provide coverage of prison blind spots after inmates were assaulted "suggest[ed] that once [the prison] became aware of risks the inmates faced it chose not to ignore them but rather took steps to address them").

Because the Complaint alleges only that Link and Banta knew the area where Lee was attacked was a blind spot, but does not allege any additional facts from which it can reasonably be inferred that Link and Banta knew there was an excessive risk to inmate safety in this area prior to Lee's attack, his failure-to-protect claim will be dismissed. As Lee may be able to plead additional facts to support a plausible failure-to-protect claim, the dismissal will be without prejudice, and Lee will be granted leave to file an amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (holding "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile").

In seeking dismissal of Lee's Complaint against Norris, Defendants characterize the Complaint as alleging "a violation of the Eighth Amendment based on verbal threats by Norris," conduct which Defendants contend does not rise to the level of a constitutional violation. *See* Defs.' Mot. to Dismiss 9. In his opposition to the motion to dismiss, however, Lee characterizes his claims against Norris differently, arguing that Norris's actions resulted in his being denied proper medical attention for the injuries he sustained in the attack. *See* Pl.'s Opp'n to Mot. to

7

Dismiss 1-2. Lee also appears to fault Norris for failing to protect him, citing her failure "to escort [him] to a secure place of safety for his protection, knowing that he had just been attacked by another inmate," and her advice that Lee not report the attack. *Id.* at 3; *see also id.* at 2 (asserting that "not letting [Lee] go to medical could have exposed [him] to being attacked more").

Insofar as Lee seeks to pursue a claim for failure to protect against Norris, this claim suffers from the same deficiency as Lee's failure-to-protect claims against Link and Banta— namely, the failure to plead facts from which deliberate indifference can reasonably be inferred. The claim is also deficient in that Lee does not allege Norris's failure to protect caused him any harm. The Complaint alleges that Norris "ma[de] [Lee] stay" on his cell block after learning he had been attacked by another inmate in a different area of the prison, *see* Compl. 6, but alleges no facts suggesting that Norris was aware of any risk of further harm to Lee on the cell block. Lee does not allege, for example, that his assailant also lived on the same cell block, such that remaining on the cell block posed a risk of future encounters with his assailant. Although the Complaint also alleges that Lee later received a threatening letter, prompting an unidentified sergeant to put Lee on self lock up, Lee did not receive this letter until two days after the attack, and Norris thus could not have been aware of it when she kept him on his cell block on the day of the attack.[3] Because the Complaint fails to allege facts from which it can reasonably be inferred that Norris knew of and disregarded a substantial risk of serious harm to Lee, much less that Norris's deliberate indifference caused him harm, Lee's failure-to-protect claim against

---

[3] Indeed, the Complaint does not allege Norris was ever aware of the letter or the threats made therein.

Norris will be dismissed without prejudice. Lee will also be granted leave to amend as to this claim.

Lee's claim that Norris denied him access to medical care presents a closer question. To state an Eighth Amendment for failure to provide medical care, a plaintiff must allege that prison officials acted with deliberate indifference to his serious medical needs. *See Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017). "A medical need is 'serious' . . . if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention,'" or if "'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted). Deliberate indifference may be established by showing, inter alia, that prison officials ignored objective evidence that the plaintiff had a serious need for medical care, *see Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003), intentionally refused to provide medical care despite knowing of the need for such care, *see Monmouth Cty.*, 834 F.2d at 346, or delayed necessary medical care for non-medical reasons, *see id.*

Although the Complaint does not describe Lee's injuries in detail, it alleges he was cut on the face and the arm with a homemade weapon, causing pain and scarring, including the formation of "irregular fibrous tissue" at the site of the scars. Compl. 3, 5-6. These allegations suggest Lee's injuries were more than "cuts requiring no more than small bandages," which have been held not to constitute serious medical needs for purposes of the Eighth Amendment. *See Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007). The Complaint further alleges that when Lee told Norris about the attack, she deterred him from obtaining medical attention and threatened him with disciplinary action if he went to the medical department, suggesting that

9

Norris ignored Lee's apparent need for medical care. Drawing all inferences in Lee's favor—and absent any argument by Defendants to the contrary—the Court finds Lee has arguably stated a claim for denial of medical care against Norris. Therefore, this claim will be allowed to proceed.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss Lee's Complaint will be granted in part and denied in part. The motion will be granted as to all claims against Defendants in their official capacities, which will be dismissed with prejudice, and as to Lee's failure-to-protect claims against all Defendants, which will be dismissed without prejudice to Lee's right to file an amended complaint to correct the pleading deficiencies in these claims. The motion will be denied as to Lee's denial-of-medical-care claim against Norris.

An appropriate order follows.

BY THE COURT:

   /s/ Juan R. Sánchez
Juan R. Sánchez, J.