IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MO'HAMMED LEE | FILED | CIVIL ACTION |
| v. | JUN 13 2019 | No. 17-2528 |
| WARDEN C. LINK, et al. | KATE BARKMAN, Clerk By_____ Dep. Clerk | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                    **June 13, 2019**

On February 19, 2017, Plaintiff Michael Mo'Hammed Lee, an individual then in the custody of the Pennsylvania Department of Corrections, was attacked in a hallway in the recently decommissioned State Correctional Institute-Graterford (SCI-Graterford or the prison). He brings the above-captioned action pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Eighth Amendment to the U.S. Constitution. In Count 1, he claims Defendants Cynthia Link and Laura Banta, the Superintendent and Deputy Superintendent, respectively, failed to protect him from the danger posed by a notorious blind spot in the prison's security. In Count 2, Lee seeks to recover from Defendant Correctional Officer Jamelle Norris for her refusal to provide him with medical attention after the attack. Defendants moved for summary judgment on both counts, arguing, inter alia, that Lee failed to exhaust available prison remedies as required under the Prison Litigation Reform Act. For the reasons stated below, the Court will grant the motion as to Count 1 and deny it as to Count 2.[1]

**FACTS**[2]

---

[1] The Court is grateful for the pro bono service of Lee's counsel, Samuel Harrison, Esquire, and Alexander Harris, Esquire, of Pepper Hamilton LLP, and commends counsel for both Lee and Defendants for a well-argued motion.

[2] The followings facts are drawn from the summary judgment record and from the testimony and evidence presented at the June 7, 2019, evidentiary hearing on the issue of exhaustion. The facts are undisputed, except where specifically noted to the contrary. At the summary judgment stage, the Court views the facts in the light most favorable to Lee, the non-moving party, except as to the

1

The events giving rise to this litigation occurred when Lee was incarcerated at SCI-Graterford, which has since been decommissioned. Link was the superintendent of the prison.[3] Banta was SCI-Graterford's Deputy Superintendent of Centralized Services, a role in which she was responsible for the administration of primary support services, including health care, education, religion, activities, substance-abuse disorder treatment, food service, correctional industries, programming, and inmate records. Norris was a correctional officer at SCI-Graterford, who worked on the block in which Lee was housed at the time of the incident giving rise to this litigation.

At some prior to the incident, Lee received an inmate handbook, which included a copy of the Pennsylvania Department of Corrections Inmate Grievance Policy, DC-ADM 804 (the Grievance Policy). *See* Defs.' Mot. for Summ. J. Ex. F, at 4-38. This Policy establishes a three-tier system for inmate grievances. First, an inmate submits a grievance using a DC-804, Part 1 form. The grievance "must include a statement of the facts relevant to the [inmate's] claim," Grievance Policy § 1.A.11, and "shall identify individuals directly involved in the event(s) [giving rise to the grievance]," *id.* § 1.A.11.d. An inmate "files" a DC-804, Part 1 form by placing it in one of several lock boxes located throughout the facility within 15 working days of the incident giving rise to the grievance. *Id.* § 1.A.8. An inmate in a specialized housing unit, like the Diversionary Treatment Unit at SCI-Graterford, may also "file" a DC-804, Part 1 form by giving the form to a staff member. *Id.* § 1.B.4.b.

---

issue of exhaustion, which the Court must resolve itself. *See Small v. Camden Cty.*, 728 F.3d 265, 269-70 (3d Cir. 2018); *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018).

[3] Link has an extensive employment history at Graterford, including time in various leadership roles in the prison organizational hierarchy.

2

"Upon receipt" of the DC-804, Part 1 form, the Facility Grievance Coordinator is required to assign it a grievance tracking number and enter it in the Automated Inmate Grievance Tracking System (AIGTS). *Id.* § 1.C.1. A Grievance Officer is then appointed to prepare an Initial Review Response Form, which must be returned to the inmate within 15 working days from the date the grievance was entered into the AIGTS. Under the Policy, the Grievance Officer may obtain a single, ten working day extension of the time to respond. *Id.* § 1.C.5.h. If such an extension is obtained, it "must be entered into [AIGTS] and the inmate must be notified in writing." *Id.* § 1.C.6.e.

The second tier of the grievance system permits an inmate to appeal the Initial Review Response to the Facility Manager (i.e., the superintendent) within 15 working days "from the date of the initial review response/rejection." *Id.* § 2.A.1.a. Prior to filing any appeal, Grievance Policy § 2.A.1.b requires the initial review "response/rejection . . . be received by the inmate before any appeal to the Facility Manager can be sought." The Facility Manager must notify an inmate of his or her decision using the Facility Manager's Appeal Response within 15 working days "from receiving the appeal." *Id.* § 2.A.d.1. A single ten-day extension is permitted but requires written notice to the inmate. *Id.* § 2.A.d.5.

The third tier of the grievance system permits an inmate "who is dissatisfied with the deposition of an appeal from the Facility Manager" to appeal to the Secretary of the Department of Corrections' Office of Inmate Grievances and Appeals (SOIGA). *Id.* 2.B.1.b. This appeal must be submitted within 15 working days from the date of the Facility Manager's decision. *Id.* However, as with the appeal to the Facility Manager, an appeal to SOIGA may *only* be filed *after* an inmate has received the Facility Manager's decision. *Id.* § 2.B.1.a. SOIGA is obligated to act on the appeal within 30 working days of its receipt, unless an extension of up to ten working days

is warranted to further investigate an inmate's claims (which requires notice to the inmate). *Id.* § 2.B.2.a.

On February 19, 2017, Lee competed in a basketball game with a fellow inmate at SCI-Grateford. Not long thereafter, Lee received a message he was wanted in the recreation library. While Lee was in the New Side Library Hallway on his way to the library, he was confronted by his basketball opponent, who slashed Lee with a homemade weapon. Lee sustained lacerations to his temple, left bicep, and left forearm. Defs.' Mot. for Summ. J. Ex. E. After the altercation, Lee returned to his cell, where he attempted to clean his wounds. He then approached Norris and requested medical attention. Although the parties disagree on how Norris responded, they agree Lee did not receive medical attention for several days. *Id.*

On February 23, 2017, while housed in Graterford's Diversionary Treatment Unit, Lee completed a DC-804, Part 1 form regarding his attack in the New Side Library Hallway and Norris's allegedly inadequate response to his request for medical attention. *See* Pl.'s Opp'n Ex. 1. He filed the form by giving it to a staff member for processing.[4] Lee's DC-804, Part 1 form states, in pertinent part:

> On or about 2-19-17 I was approached by a[n] inmate over a ballgame[.] [T]he inmate then started to swing a sharp object and the object cut me in the face and 2 times on my arm[.] I then told C/O Norris that works F-A[.] She told me if I go to medical that I will go to the [hole] and will mess up my parole. But then I got a note on 2-21-17 so I took self lock up. . . .Note: I[']m only here at SCI Graterford for court. D[ue] to lack of security during a line movement[.] Also no inmate should have access to a weapon in a maximum security prison. Now for the breach of security and my safety also for my pain and suffering injuries I received I would like monetary compensation.

---

[4] Although a copy of Lee's February 23, 2017, grievance is part of the summary judgment record, the parties dispute whether Lee ever filed this grievance. This factual dispute is for the Court to resolve. *See Small*, 728 F.3d at 269-70; *Paladino*, 885 F.3d at 211. As explained in greater detail below, the Court finds that Lee did file the grievance by giving the form to a staff member in the Diversionary Treatment Unit.

4

*Id.* The document also indicates Lee spoke to Norris and "also a sgt and L.T.," which the Court interprets to mean a sergeant and lieutenant. *Id.* Lee also requested photos be taken of his injuries. *Id.*

The prison never responded to Lee's February 23, 2017, grievance. On April 2, 2017, Lee filed a second grievance, which again referred to the February 19, 2017, attack and the prison's failure to protect him. Defs.' Mot. for Summ. J. Ex. F, at 42. The prison responded to this grievance on May 5, 2017, indicating Lee's complaint of a blind spot "was inspected and a new camera was installed as of 4/19/17." *Id.* at 43. Lee filed a third grievance on May 17, 2017, in which he specifically complained about the prison's lack of response to the February 23, 2017, grievance. *Id.* at 44. The prison responded to the May grievance on June 19, 2017, stating, in part, it "did not receive/process a grievance from you on 2/19/2017 regarding you being cut by another inmate." *Id.* at 45.[5]

On June 14, 2017, Lee filed the instant action pro se. After some initial motion practice, Lee moved for the appointment of counsel. This matter was then referred to the Court's Prisoner Civil Rights Panel, and accepted by Lee's present counsel, who subsequently filed an amended complaint on Lee's behalf, asserting an Eighth Amendment claim for failure to protect against Link and Banta and another for the denial of medical care against Norris. Following the close of discovery, Defendants moved for summary judgment. The Court held oral argument and an evidentiary hearing on the exhaustion issue on June 7, 2019, at which Lee and two correctional

---

[5] The parties disagree as to the proper characterization of the April and May grievances. Lee contends that the April grievance should be considered an appeal of the February grievance, and the May grievance a final appeal of the April grievance. Defendants argue that both the April and May grievances should be treated as separate grievances. As explained in greater detail below, the Court need not resolve this dispute.

5

witnesses—Kristina Owens, the Grievance Coordinator at SCI-Phoenix, and Kerri Moore, the Assistant Chief of SOIGA—testified. The matter is now ripe for decision.

**DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute is one where "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted).

Defendants first argue they are entitled to summary judgment because Lee failed to exhaust his administrative remedies. Exhaustion is required under the PLRA, which prohibits an action "with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Defendants' argument is based on their contention that Lee did not file a grievance regarding the assault in February 2017. Defendants maintain that Lee first grieved the alleged lack of security in the New Side Library Hallway in April 2017 and did not

6

properly pursue this grievance through the three tiers of the Grievance Policy. They also argue that Lee never grieved Norris's alleged denial of medical care or Banta's involvement in the issues in the grievances he did file.

The Court first addresses the exhaustion issue as to Norris.[6] The PLRA requires an inmate to exhaust "available" intra-prison administrative remedies. *See* 42 U.S.C. § 1997e(a). "[A]n administrative procedure is unavailable when (despite what regulations or guidance materials might promise) it operates as a simple dead end." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016). Failing to timely respond to a grievance and ignoring an inmate's follow-up request for a decision renders a prison's administrative process unavailable. *See Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2018). "Failure to exhaust is an affirmative defense the defendant must plead and prove." *Small*, 728 F.3d at 268-69 (citing *Jones v. Bock*, 549 U.S. 199, 212, 216-17 (2007)). Whether a defendant has met this burden is a question of fact for the Court to determine. *Id.* at 269-70; *see also Paladino*, 885 F.3d at 211.

In order to determine whether Lee exhausted his administrative remedies as to Norris, the Court must first make a factual determination as to whether the February 23, 2017, grievance was submitted. Defendants claim it was not; Lee insists it was. Having reviewed the parties' written submissions, and heard the live testimony of Lee, Kristina Owens, and Keri Moore, the Court concludes the February 23, 2017, grievance was submitted properly pursuant to Grievance Policy § 1.B.4.b. The Court's factual finding is supported by Lee's credible testimony that he gave the grievance to a staff member while housed in Graterford's Diversionary Treatment Unit. Lee's credibility is bolstered in two ways. First, Lee's April 2, 2017, and May 17, 2017, grievances both refer to the February 23, 2017, grievance. As the only documentary evidence created near

---

[6] For clarity, the Court will address Count 2 before Count 1.

7

contemporaneously to the February 23, 2017, grievance, the Court finds these references are persuasive evidence the February grievance existed. And second, Lee's credibility is bolstered by other evidence of the prison's failure to promptly retrieve and enter grievances, such as the fact Lee's April 2, 2017, grievance was not received by the Facility Grievance Coordinator until April 6, 2017, despite Ms. Owens testimony grievances are collected each working day.[7]

The Court also finds Defendants failed to proffer evidence controverting Lee's testimony. At most, Owens (who only recently became the Facility Grievance Coordinator at Graterford's successor, SCI-Phoenix) and Moore (who works for SOIGA) were able to testify there was no record of Lee's February 23, 2017, grievance in their files. Neither Owens nor Moore had any personal knowledge of whether Lee filed grievance (after all, neither worked in SCI-Graterford's Diversionary Treatment Unit) and both conceded at the June 7, 2019, evidentiary hearing no follow-up investigation was ever undertaken—by them or others—to determine if or how Lee's grievance fell through the cracks—even after Lee attempted to follow up on the February grievance in April 2017. *See* Defs.' Mot. for Summ. J. Ex. F, at 44 ("I filed a[] grievance on or about 2-23-17 for being cut by an inmate on 2-19-17 and I never got a response.").[8] The Court also rejects Defendants' suggestion that the fact Lee filed a number of grievances that were recorded, *see id.* at 39-41, necessarily shows his failure to follow the Grievance Policy in this instance. The volume of recorded grievances also shows Lee was familiar with the Grievance Policy. The failure of the February grievance to make it into the prison's tracking system does not mean the error was on

---

[7] It took even longer for the prison to process Lee's May 2017 grievance, although some of this delay may be attributable to the fact Lee filed this grievance while housed at SCI-Mahanoy.

[8] Owens conceded at the hearing that the prison *never* undertakes *any* kind of investigation when prisoners complain their grievances have not been processed. Moore, on the other hand, conceded on a few occasions SOIGA staff would follow-up on inmate complaints that their institution failed to respond to their grievances.

Lee's end. In light of the foregoing, the Court finds Lee submitted the grievance on February 23, 2017.

Having determined the February 23, 2017, grievance was filed, the Court has little trouble determining that, as a matter of law, the balance of the administrative process was rendered unavailable to Lee. Lee filed the grievance on February 23, 2017. *See* Pl.'s Opp'n Ex. 1. The prison's response was due on March 16, 2017—fifteen working days later. The prison did not respond to the substance of his grievance during this time period or at any time thereafter.[9] The prison's failure to respond thus rendered the administrative process unavailable.[10] *See Small*, 728 F.3d at 273 (noting "when [plaintiff] failed to receive even a response to the grievances . . . much less a decision as to those grievances, the appeals process was unavailable to him"). As a result, the Court finds Lee's claim against Norris—which was the subject of the February 23, 2017, grievance—is not procedurally defaulted. Because Defendants concede a genuine issue of material fact exists as to Norris's liability, Defs.' Mot. Summ. J. at 2, Defendants' motion for summary judgment will be denied as to Count 2.

Defendants make a different exhaustion argument in favor of their motion as it pertains to Banta. They argue Lee failed to exhaust his remedies as to Banta by not identifying her by name

---

[9] Defendants make much of the fact that Lee's April 2, 2017, and May 17, 2017, grievances failed to identify Norris. However, having determined the administrative process was blocked by the prison's failure to respond to the February 23, 2017, grievance, these additional grievances are only relevant to the extent they evidence Lee's repeated attempts to get the prison to respond to his concerns.

[10] To the extent Defendants suggest Lee should have appealed despite the prison's failure to respond, such an argument would be meritless. An appeal of a non-decision is plainly impermissible under the Grievance Policy. *See* Grievance Policy § 2.A.1.b ("The initial review *response/rejection* from the Facility Grievance Coordinator/designee *must be received by the inmate* before any appeal to the Facility Manager can be sought." (emphasis added)); *id.* § 2.B.1.a ("The *decision* from the appeal to the Facility Manager/designee *must be received by the inmate* before an appeal to Final Review can be sought." (emphasis added)).

9

or title in any of the three grievances he filed. The Court agrees and will grant summary judgment on Count 1 in her favor.

As noted above, a prisoner is required by 42 U.S.C. § 1997e(a) to exhaust available administrative remedies before filing suit in federal court. As also noted above, the Grievance Policy for inmates requires the grievant to "include a statement of the facts relevant to the claim." In *Spruill v. Gillis*, the Third Circuit interpreted this language in a prior version of the Grievance Policy to require an inmate to identify the federal court defendant in the grievance in order to exhaust remedies as required by the PLRA. 372 F.3d 218, 234 (2004). In other words, the Court held a failure to identify a defendant in a grievance was a failure to follow the Grievance Policy, and thus a failure to exhaust against a particular defendant for purposes of the PLRA. In a non-precedential opinion, the Third Circuit recently reaffirmed this holding, noting, "[a] Pennsylvania inmate's failure to properly identify a fact relevant to a claim—including the identity of a defendant—in a grievance constitutes failure to properly exhaust his administrative remedies as to that defendant." *Payne v. Duncan*, 692 F. App'x 680, 681 (3d Cir. 2017).

Banta is entitled to summary judgment because Lee did not identify her in the administrative process and the prison did not waive the identification requirement. It is uncontested Lee's grievance was governed by the Grievance Policy, which required him to state "facts relevant to his claim." Grievance Policy § 1.A.11. As the Third Circuit held in *Spruill* and *Payne*, this language obligated Lee to identify the individuals responsible for his alleged mistreatment. Lee filed a grievance on February 23, 2017, which he pursued through additional fililngs on April 2, 2017, and again on May 17, 2017. However, none of these documents contain any reference to Banta (or her title, which the Court presumes might otherwise suffice). *See* Defs.' Mot. for Summ.

J. Ex. F, at 42, 44; Pl.'s Opp'n Ex. 1. As a result, Lee has failed to comply with Grievance Policy § 1.A.11, and thus not exhausted his claim against Banta.

The Court also perceives no basis to find the prison waived Lee's obligation to identify Banta. In *Spruill*, although the Third Circuit found the plaintiff-prisoner procedurally defaulted his claim by failing to identify an individual he later sued, the Court nevertheless held the prison had waived the identification requirement by identifying that individual in its response to the plaintiff's grievance. 372 F.3d at 234 (noting "the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance"). The prison did not similarly identify Banta in a response to any of Lee's grievances, and thus did not waive Lee's obligation to identify her.

To the extent Lee argues the prison waived the identification requirement because at a meeting in March or April 2017 Banta told Lee the prison had "looked" at the blind spot and the problem was "for maintenance," *see* Defs.' Mot. for Summ. J. Ex. A at 46:10-47:21, this argument is unpersuasive. Even assuming the conversation recounted by Lee during his deposition took place (which Defendants do not concede), Banta's statements do not amount to acknowledgment that she was "fairly within the compass" of Lee's grievances. *Spruill*, 372 at 234. It is undisputed that Banta as Deputy Superintendent did not oversee the maintenance department. Moreover, Banta's acknowledgment during her deposition that it was "everybody's role" and "everybody's function" to identify security issues, *see* Defs.' Mot. for Summ. J. Ex. C at 16:18-17:1, cannot be reasonably construed as an acknowledgment that the lack of a functioning security camera was her responsibility. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."). As a result, the Court finds the prison did not waive Lee's obligation to identify Banta and his undischarged obligation

11

to identify Banta was, therefore, not excused. The claim is thus procedurally defaulted and the Court will grant summary judgment in Banta's favor.

Defendants make a similar exhaustion as to Link, asserting Lee failed to properly appeal the denial of his grievances which identified her, specifically. The Court need not resolve this issue, however, because even assuming Lee did exhaust his remedies as to Link, she would nevertheless be entitled to summary judgment on the merits of his failure to protect claim.

In *Farmer v. Brennan*, the Supreme Court recognized prison officials' Eighth Amendment duty to protect prisoners from attack by their fellow prisoners. 511 U.S. 825, 833 (1994). In order to state an Eighth Amendment claim for failure to protect, a prisoner must produce evidence tending to show: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). Deliberate indifference is a subjective standard in the prison context. *Id.* A prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837. Such actual knowledge may, however, be proved by "inference from circumstantial evidence," including the obviousness of the risk in question. *See Bistrian*, 696 F.3d at 367 (observing "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious" (quoting *Farmer*, 511 U.S. at 842)).

The Court will grant summary judgment because Lee has not produced evidence from which a rational jury could conclude Link was deliberately indifferent to an excessive risk to Lee's health and safety. Lee argues Link's long employment history at the prison, along with an incident

12

in the hallway in 1996, Lee's own misconduct in the alleged blind spot in the early 2000s, and Link's concession that blind spots pose a general risk to inmates, supports the inference she was aware that a blind spot in the New Side Library Hallway posed an excessive risk to inmate health and safety. None of these bases stand up to scrutiny.

First, Lee's reliance on Link's long tenure at SCI-Graterford is misplaced. While her employment history, which includes stints at nearly every level of prison leadership, suggests she may have been aware of the existence of the blind spot, Link's simple awareness of a blind spot is not enough. As Defendants point out, the question under *Farmer* is a more specific one, i.e., whether a defendant was aware of "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. That Link may have worked at the prison for a substantial portion of her career in corrections is not probative of this, more specific, inquiry, and as, a result, does not support an inference she was aware of an excessive risk to inmate safety.

Second, to the extent Lee relies on the 1996 incident he described in his deposition or his own history of misconduct in the blind spot to establish the New Side Library Hallway posed an excessive risk of harm, *see* Defs.' Mot. for Summ. J. Ex. A at 43:15-46:9, the Court is not persuaded that this is sufficient to survive Rule 56 scrutiny. As an initial matter, there is no evidence in the record suggesting that Link was aware of the 1996 incident or of Lee's own misconduct in the New Side Library Hallway.[11] *Id.* at 43:5-7 ("Q. And then did you ever speak

---

[11] The Court acknowledges Lee's argument that an absence of grievances regarding the hallway is not probative of whether the hallway was regularly used for misconduct. If, as Lee claims, both inmates and staff were aware of the blind spot and used it for illicit activities, the paucity of formal complaints makes sense. However, even disregarding the absence of formal complaints about the New Side Library Hallway as evidence of the lack of risk it posed, it is Lee's burden to produce evidence from which a rational jury could conclude the hallway was a known security risk. He has not done so, and summary judgment is, therefore, appropriately entered in Link's favor. *Cf. Marten*, 2015 WL 1431079 at *4-5 (denying summary judgment where plaintiff produced

13

about the blind spot with Cynthia Link? A. No, I didn't. I never spoke to her, like verbally, face-to-face. We never spoke to each other face-to-face at all."). Moreover, the Court is not persuaded isolated incidents between ten and twenty years prior to Lee's attack are sufficient evidence that the risk posed by the hallway was obvious, "longstanding," or "pervasive," nor is there any evidence security breaches in the hallway were "well-documented" or "expressly noted" by prison officials. *See Farmer*, 511 U.S. at 842-43. [12]

Finally, the Court rejects Lee's argument that Link's under-oath concession that blind spots, as a general matter, pose security risks to staff and inmates supports the inference she aware of an excessive risk to inmate safety. *See* Defs.' Mot. for Summ. J. Ex. B at 19:13-20:23. That Link conceded during her deposition that *a* blind spot would pose a substantial risk does not mean that she was *aware* that *the* blind spot in the New Side Library Hallway posed such a risk. *See Blueberry v. Commanche Cty. Facilities Auth.*, 672 F. App'x 814, 818 (10th Cir. 2016) (affirming summary judgment in defendants' favor based, inter alia, on the lack of any evidence that prison blind spots "presented such an obvious risk that [the prison] was aware of them before the incidents alleged in this case."); *Garrett v. Wexford Health*, No. 14-31, 2014 WL 4186921, at *3 (W.D. Pa.

---

affidavits from fellow inmates, his own declaration, defendants' responses to requests for admission, and a letter plaintiff wrote to the superintendent describing blind spots).

[12] In *Farmer*, the Supreme Court identified the types of circumstantial evidence which could, hypothetically, support a finding of actual knowledge of a substantial risk of harm:

> If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

511 U.S. at 842-43.

Aug. 21, 2014) (noting "courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim"); *cf. Marten v. Burns*, No. 13-266, 2015 WL 1431079, at *5 (W.D. Pa. Mar. 27, 2015) (denying summary judgment where plaintiff produced evidence showing assaults occurred in blind spots that were not detected by surveillance cameras or staff). As a result, the Court finds that Lee has failed to establish a genuine issue of material fact and Link is entitled to summary judgment in her favor.

**CONCLUSION**

For the reasons stated above, the Court will grant Defendants' motion for summary judgment as it pertains to Defendants Banta and Link, and will deny the motion as it pertains to Defendant Norris.

An appropriate order follows.

BY THE COURT:

*/s/ Juan R. Sánchez*
Juan R. Sánchez, C.J.

15